UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DAVID P. OETTING, individually and on behalf of all others similarly situated, )
)
)
Plaintiffs, )
)
vs. ) Case No. 4:11-CV-253 (CEJ)
)
HEFFLER, RADETICH & SAITTA, LLP, )
)
Defendant. )

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss Count III of plaintiff's purported class-action complaint, alleging liability on a theory of *respondeat superior*. Plaintiff has filed a response in opposition to the motion and the issues are fully briefed. Also pending is defendant's motion to transfer to the Eastern District of Pennsylvania, which the Court will address by separate order.

### I. Background

Plaintiff David P. Oetting was class representative for a class of NationsBank shareholders who alleged improprieties by Bank of America in its merger with NationsBank. See *In re* BankAmerica Corp. Sec. Litig., No. 4:99-MD-1264 (CEJ) (E.D. Mo.). A settlement was approved by the Court and defendant Heffler, Radetich & Saitta, LLP (Heffler) was appointed to administer claims. Christian Penta, a Heffler accountant, participated with five non-employees in a scheme to present false claims for payment from the settlement fund, resulting in the misappropriation of more than $5 million from the fund. The members of the scheme were indicted on charges of

mail fraud, wire fraud, and money laundering in the Eastern District of Pennsylvania.[1] Plaintiff filed this action against Heffler asserting claims of breach of fiduciary duty, accountant malpractice, and *respondeat superior*. Defendant moves to dismiss plaintiff's *respondeat superior* claim for failure to state a claim upon which relief can be granted.

## II. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 550 U.S. at 570. See also id. at 563 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement.") "Factual allegations must be enough to raise a right to relief above the speculative

---

[1]The co-conspirators were charged with submitting false claims to three different funds, for a total loss in excess of $40 million. Penta pleaded guilty and was sentenced to a term of 60 months' imprisonment and ordered to pay restitution in an amount in excess of $19.5 million. United States v. Christian J. Penta et al., No. 2:08-CR-550 (TJS) Judgment (E.D. Pa. Mar. 30, 2010). Another participant in the scheme, Kenneth Waltzer, was sentenced to 132 months' imprisonment and ordered to pay in excess of $40.5 million in restitution. United States v. Kevin Waltzer, No. 2:08-CR-552 (SD) Judgment (E.D. Pa. Mar. 12, 2010).

level." Id. at 555. "The court may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record." Detroit General Retirement System v. Medtronic, Inc., 621 F.3d 800, 805 (8th Cir. 2010) (quoting In re K-tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 889 (8th Cir. 2002)).

   III.   Background

Plaintiff makes the following allegations: In 1999, Heffler was appointed as claims administrator for In re BankAmerica Corp. Sec. Litig., No. 4:99-MD-1264 (CEJ). Compl. ¶ 5 [Doc. #1]. On September 30, 2002, the court approved the terms of settlement, which established a settlement fund in the amount of $490 million. Id. ¶ 6, 7. Heffler was responsible for reviewing submitted claims, identifying valid and invalid claims, and distributing settlement proceeds to valid claimants. Id. ¶ 17. Christian Penta was a senior accountant for Heffler, employed to assist in evaluating submitted claims. Id. ¶ 45. His duties included reviewing claim documents and addressing issues that arose with the claimants. Id. ¶ 19. He submitted or caused to be submitted false claims seeking payment from the settlement fund. Id. ¶ 20.

On May 13, 2004, lead counsel for the NationsBank Class filed a motion for distribution of the settlement funds. The motion was supported by an affidavit from Heffler stating that it had examined the claims to determine that they were "properly completed, signed, and documented." Id. ¶ 21. The court granted the motion for distribution and ordered distribution in accordance with Heffler's examination and calculations. The distribution included payments of over $5 million based on false claims submitted by Penta and his co-conspirators. Id. ¶ 22. At all times relevant to the claims, Penta was employed by Heffler as a certified public accountant assisting in the evaluation of submitted claims. Id. ¶ 45. He was acting within the scope of his

employment duties, was "engaged in and about Heffler's business, and was carrying out Heffler's purposes in part." Id. ¶ 47, 48.  Penta's conduct was outrageous, oppressive, and characterized by malice or wantonness justifying the imposition of punitive damages on Heffler.  Id. ¶ 49.

The indictment against Penta, which the parties agree the Court may properly consider, provides further details regarding the scheme. United States v. Penta, et al., 2:08-CR-550 (TJS) Indictment (E.D. Pa. Sept. 11, 2008) [Doc. #9-1]. By virtue of his position with Heffler, Penta had access to the computer system that contained the records of each claim.  Penta was responsible for reviewing claim documents to determine whether the claimant was entitled to recovery.  Id. ¶ 9.  The conspirators created fake corporations, opened bank accounts, and used professional office services to take phone messages and receive mail.  They also created fake brokerage account statements to falsely establish ownership of securities and entitlement to a share of the settlement funds.  Id. ¶ 14.  Penta used his inside knowledge to advise the outside conspirators regarding impending deadlines.  He also provided confidential documents to assist in the preparation of false claims.  He reviewed the false claims once submitted and gave advice regarding amendments or corrections.  He personally approved the fraudulent claims or took steps to ensure that other Heffler employees approved them.  Id. ¶ 16.

## IV. Discussion

The parties are in agreement that Missouri law applies in this diversity action. Under the doctrine of respondeat superior, an employer is liable to third parties for torts committed by an employee, if the tort was committed while the employee was engaged in activities within the course and scope of his or her employment. H.R.B. v.

J.L.G., 913 S.W.2d 92, 97 (Mo. Ct. App. 1995) (citing P.S. v. Psychiatric Coverage, Ltd., 887 S.W.2d 622, 624 (Mo. Ct. App. 1994)). The plaintiff has the burden of proving that an employee's tortious conduct was within the course and scope of his employment. Ewing-Cage v. Quality Productions, Inc., 18 S.W.3d 147, 150 (Mo. Ct. App. 2000) (citing Galemore Motor Co., Inc. v. State Farm Mut. Ins. Co., 513 S.W.2d 161, 168 (Mo. Ct. App. 1974)). Plaintiff's assertions that Penta was acting within the scope of his employment are merely conclusory allegations and are not sufficient to meet his burden.

In determining whether an act was committed within the scope of one's employment, courts look not at the time or motive of the conduct, but rather at whether the act was done by virtue of the employment and in furtherance of the business or interest of the employer. Ewing-Cage, 18 S.W.3d at 150. If the act is fairly and naturally incident to the employer's business, although mistakenly or ill advisedly done, and did not arise wholly from some external, independent or personal motive, it is done while engaged in the employer's business. Noah v. Ziehl, 759 S.W.2d 905, 910 (Mo. Ct. App. 1988). "Under Missouri law, there can be no respondeat superior liability if the employee was acting entirely for his own purposes." Doe by Doe v. B.P.S. Guard Services, Inc., 945 F.2d 1422, 1425 (8th Cir. 1991).

Plaintiff argues that his respondeat superior claim falls within the category of "mixed motive cases" because Penta's actions were undertaken to serve both his own criminal interests and Heffler's interests. "[A] servant may act within the scope of his employment even though pursuing his own ends, if he is at the same time doing his master's business." Doe by Doe v. B.P.S. Guard Services, Inc., 945 F.2d 1422, 1425 (8th Cir. 1991) (citing Restatement (Second) of Agency § 235 and § 236 (1958)).

"Conduct may be within the scope of employment, although done in part to serve the purposes of the servant," and respondeat superior liability may be found where the "master's business actuates the servant to any appreciable extent." § 236, text and cmt. b.

Plaintiff cites Doe by Doe v. B.P.S. Guard Services, Inc., 945 F.2d 1422, 1425 (8th Cir. 1991) to support his argument that he presents a mixed motive case. The employer in B.P.S. Guard Services was held liable for the actions of its employees who used secretly videotaped fashion-show models while they were changing clothes. The evidence established that the guards had been told "to practice taping on the VCR -- '[i]f you had free time to experiment with it, learn how to use it' and to 'learn how it works.'" Id. at 1424 (alteration in original). There was also evidence that persons with supervisory rank were aware of the guards' activities. Id. at 1426. The Eighth Circuit upheld the jury verdict in favor of the plaintiffs, stating, "the jury could conclude that since these guards were engaged in exactly the type of activity their employer had bade them to do, they were furthering their employer's business at the same time they were pursuing their own gratification." See also Butler v. Circulus, Inc., 557 S.W.2d 469, 475 (Mo. Ct. App. 1977) (security guards who used excessive force in attempting to make institutionalized plaintiff obey orders were acting within scope of employment).

Here, plaintiff does not allege that defendant directed Penta to submit fraudulent claims or aware that he was doing so. Plaintiff alleges that Penta's duties were to determine if the claimants were entitled to recover from the funds. Plaintiff also does not allege that Penta was serving defendant's interests by submitting false claims. Plaintiff has failed to make allegations that Penta was engaged in authorized activities

such that Heffler may be held liable for his actions under the doctrine of respondeat superior.

Plaintiff argues that Heffler should be liable for Penta's "outrageous" conduct. However, "the fact that an act is done in an outrageous or abnormal manner has value in indicating that the servant is not actuated by an intent to perform the master's business." Henderson v. LaClede Radio, Inc., 506 S.W.2d 434, 436-37 (Mo. 1974) (quoting Restatement (Second) of Agency § 235 cmt. c); Wellman v. Pacer Oil Co., 504 S.W.2d 55, 58 (Mo. 1973) (*en banc*) (holding that acts of gas station attendant who shot customer were "outrageous and criminal" and as a matter of law were outside scope of employment).

Plaintiff finally argues that Heffler should be liable for Penta's conduct because the fraud was foreseeable. The Missouri Supreme Court has adopted the following language from the Restatement (Second) of Agency § 231, cmt. a:

> The fact that the servant intends a crime, especially if the crime is of some magnitude, is considered in determining whether or not the act is within the employment, since the master is not responsible for acts which are clearly inappropriate to or unforeseeable in the accomplishment of the authorized result. The master can reasonably anticipate that servants may commit minor crimes in the prosecution of the business, but serious crimes are not only unexpectable but in general are in nature different from what servants in a lawful occupation are expected to do.

Wellman, 504 S.W.2d at 58; see also Bradley v. Transportation Sec. Admin., 552 F. Supp. 2d 957, 961 (E.D. Mo. 2008) (dismissing claim against TSA because, under Missouri law, any TSA agent who committed a criminal act and removed items from plaintiff's luggage was operating outside the scope of his employment).

Plaintiff has failed to allege facts sufficient to support his claim that Penta was acting within the scope of his employment when he participated in a fraudulent scheme to submit false claims to the settlement fund.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant Heffler, Radetich & Saitta, LLP, to dismiss Count III of plaintiff's complaint for failure to state a claim [Doc. #8] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 25th day of July, 2011.